IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PAUL BUTT, JR.,

    Plaintiff,

v.                                                                                            Civil No. 03-0095 WJ/LFG

BANK OF AMERICA, N.A.,

    Defendant.

**MEMORANDUM OF DECISION**

THIS MATTER is before the Court for final resolution. Plaintiff filed his original Complaint in state court. The original Complaint was styled as a Petition for Accounting and Other Relief, alleged that Plaintiff is the beneficial owner of a Lease held in trust by the Defendant, requested a full accounting of all royalty income and other profits paid to Defendant and its predecessors in interest, and requested that Defendant pay to Plaintiff, together with interest, any distributions that should have paid. Defendant removed the case to U. S. District Court based on diversity jurisdiction and filed a motion to dismiss Plaintiff's action arguing that Plaintiff's claim was time barred because New Mexico law requires that trust beneficiaries bring accounting claims against trustees within six years after such claims accrue. Plaintiff then filed an Amended Complaint [Docket No. 15] which included similar factual allegations as the original complaint but alleged two separate claims. The first claim was for a breach of fiduciary duty and the second was for breach of contract.

By Memorandum Opinion and Order filed July 12, 2004, the Court granted summary judgment to Defendant with regard to Plaintiff's breach of contract claim on the basis that the

claim was barred by the statute of frauds and because the Defendant was not a party to any contract with Plaintiff.  See Docket No. 97.  Thus, Plaintiff's only remaining claim was for breach of fiduciary duty.

On two separate occasions, the Court considered whether Plaintiff was entitled to a jury trial on his claim for breach of a fiduciary duty.  By a Memorandum Opinion and Order filed June 1, 2004, and a Memorandum Opinion and Order filed November 12, 2004, the Court determined that Plaintiff was entitled to a jury trial on his breach of fiduciary claim to the extent the issue of a breach of duty and the issue of damages was to be decided.  See Docket Nos. 95, 110.  However, the Court recognized the existence in this case of a threshold legal issue regarding the existence of a trust relationship between Plaintiff and Defendant.  See Docket No. 110.  Accordingly, the Court bifurcated the trial of this case with the initial trial being a bench trial to resolve the issue of the existence of a trust relationship.  See Docket No. 110.

A bench trial was held on January 5 and January 6, 2005.  Upon consideration of all the evidence before the Court and the law applicable to the issues in the case, the Court herein issues its Findings of Fact and Conclusions of Law on the issue of the existence of a trust relationship between Plaintiff and Defendant.

**FINDINGS OF FACT**

A.  HISTORICAL RELATIONSHIP OF THE PARTIES AND THE ACQUISITION OF THE OIL AND GAS LEASE

1.  Bank of America, N.A. ("Defendant") is the successor in interest to the corporations known as Albuquerque National Trust Savings Bank, Albuquerque National Bank, Sunwest Bank, Boatman's Bank, Nations Bank, and Bank of America.  Plaintiff's Requested

Finding of Fact ¶ 1; Defendant's stipulation/ admission at trial.

  2.  In 1931or thereabouts, C. Frederick Luthy, Paul Butt, Sr., and E.T. Buckley agreed to obtain oil and gas leases from the State of New Mexico in the name of Frederick Luthy with each of them to have 33 1/3 percent interest. Plaintiff's Exhibit 3.

  3.  On April 21, 1931, the State of New Mexico issued Oil and Gas Lease A-4096 for the purpose of exploring for, developing, and producing oil and gas. Defendant's Exhibit A; Plaintiff's Exhibit 1.

  4.  The tracts of land covered by Lease A-4096 are located in Lea County, New Mexico. Defendant's Exhibit A; Plaintiff's Exhibit 1.

  5.  Lease A-4096 was issued to C. Frederick Luthy, as Lessee. Defendant's Exhibit A; Plaintiff's Exhibit 1.

  6.  E.T. Buckley died in 1936, and his interest in Lease A-4096 was thereafter sold to George A. Kaseman. Plaintiff's Requested Findings of Fact ¶ 6; Defendant's Proposed Finding of Fact ¶ 6; Plaintiff's Exhibit 3.

  7.  George A. Kaseman died in 1938. His interest in Lease A-4096 passed initially to his estate, and thereafter to a testamentary trust. Defendant's Proposed Finding of Fact ¶ 7; Plaintiff's Exhibit 3.

  8.  Albuquerque National Bank ("ANB") was appointed executor of the estate of George A. Kaseman pursuant to the terms of his will and was appointed trustee of the George A. Kaseman testamentary trust, pursuant to the terms of Mr. Kaseman's will. Defendant's Exhibit F; Plaintiff's Exhibit 3.

  9.  In 1957, the Kaseman interest in Lease A-4096 was assigned to Defiance Coal

Company.  Defendant's Exhibit F; Plaintiff's Exhibit 3.

10. In January 1939, C. Frederick Luthy filed a Claim for Adjudication of Trust Funds and Joint Adventure in the probate court with regard to the Estate of George A. Kaseman.  This document sets forth among its facts that Luthy, Kaseman and Paul Butt, Sr. acquired oil and gas leases as part of a joint venture with the legal title held in the name of Luthy for convenience with Luthy having the authority to act on behalf of the venture.  The Claim asked that the probate court determine the existence of the agreement among the parties and adjudge that Luthy continued to have authority to act in carrying out the terms of the agreement.  Plaintiff's Exhibit 31.

11. Luthy withdrew his claim for Adjudication of Trust Funds and Joint Adventure without prejudice on September 18, 1944.  Plaintiff's Exhibit 32.

12. On April 19, 1948, C. Frederick Luthy executed a document relating to Lease A-4096, entitled "Declaration of Trust."  The document did not identify a successor trustee, or provide a means for appointment of a successor trustee.  Plaintiff's Exhibit 2.

13. The Declaration of Trust was filed in the records of Lea County, New Mexico on April 1, 1964 by ANB.  Plaintiff's Exhibit 2.

14. Under the terms of the Declaration of Trust, Luthy was to have absolute control of the handling and disposition of the Lease and the periodic distribution of monies to the beneficiaries.  Plaintiff's Exhibit 2.

15. Paul Butt Sr. died intestate in 1953.  Paul Butt Jr. was his sole legal heir. Defendant's Proposed Finding of Fact ¶ 11; Plaintiff's Requested Finding of Fact ¶ 17; Defendant's Exhibit D-1; Defendant's Exhibit P-24.

16.     On March 12, 1953, Paul Butt Jr. signed, and thereafter filed with the New Mexico District Court for the Second Judicial District Court, an inventory of his father's estate. The inventory included and specifically listed and described Butt Sr.'s undivided one-third beneficial interest in the properties covered by Lease A-4096.  Defendant's Exhibit D-6.

17.     On May 5, 1955, Paul Butt Jr. signed a receipt, acknowledging that he had received all of the assets of his father's estate, including his undivided one-third beneficial interest in the leasehold covered by Lease A-4096.  Defendant's Exhibit D-5.

18.     On December 7, 1954, Luthy, Paul Butt Jr., and George Larson as president of Defiance Coal Company, signed an affidavit which set forth historical facts relating to the acquisition and management of Lease A-4096.  In the affidavit, Luthy, Larson, and Butt Jr. acknowledged and agreed that they had delegated "full and complete power of disposition" of Lease A-4096 and the interests thereunder to C. Frederick Luthy.  Plaintiff's Exhibit 3.

19.     The December 7, 1954 affidavit described the Luthy-Butt-Defiance entity as a "syndicate."  Plaintiff's Exhibit 3.

20.     The December 7, 1954 affidavit was filed in Lea County, New Mexico on December 6, 1960.  Plaintiff's Exhibit 3.

21.     The Luthy-Butt-Defiance entity was represented by the law firm of Modrall, Sperling, Roehl, Harris & Sisk, P.A. ("Modrall Firm) in Albuquerque.  Defendant's Exhibits C-1, C-2 and C-3.

22.     The Luthy-Butt-Defiance entity was represented by Haskins & Sells, a Denver firm of Certified Public Accountants.  Defendant's Exhibits C-1, C-2 and C-3.

23.     The Modrall Firm and Haskins & Sells treated and described the Luthy-Butt-

5

Defiance entity as a joint venture, and for tax purposes, as a partnership. Defendant's Exhibit C-2.

24. The Luthy-Butt-Defiance entity filed its tax returns as a partnership. Defendant's Exhibit C-2.

25. In 1972, ANB, through a trust officer, executed an affidavit, which described the Luthy-Butt-Defiance entity as a partnership, which terminated on the death of C. Frederick Luthy. Defendant's Exhibit R-4 attachment C.

26. C. Frederick Luthy died testate on January 11, 1963. His will named ANB as executor of his estate and trustee of his testamentary trust. Defendant's Exhibit E-1, E-2.

27. Among the assets included in the inventory of the estate of C. Frederick Luthy was his undivided one-third interest in the properties included in Lease A-4096. Defendant's Exhibit E-1.

28. ANB and its successors have continued to serve as trustee for the Luthy testamentary trust since its creation.

29. ANB and its successors have, in the capacity of trustee for the Luthy testamentary trust, continued to pay annual rental payments due under Lease A-4096.

B. HUMBLE ASSIGNMENT - TRACTS 12, 13, 14, 18, 19 AND 20

30. On May 15, 1963, a letter sent to Humble Oil & Refining Co. offered to sell the mineral interest in Tracts 12, 13, 14, 18, 19, and 20,[1] as set forth and described in Lease A-4096.

---

[1] The tract numbers referred to in this Court's Findings of Fact and Conclusions of Law refer to the "line" number on the original oil and gas lease which is of record as Plaintiff's Exhibit 1 and Defendant's Exhibit A. Use of the tract numbers in lieu of the legal subdivision descriptions is for ease of reference.

6

This letter was signed by a Vice-President and Trust Officer of ANB as Executor of the Estate of Luthy, by Cyrene Luthy, the widow of Fred Luthy, by the President of Defiance Coal Company, and by Paul Butt, Jr. The offer was accepted by Humble on May 21, 1963. Defendant's Exhibit P-4.

31. The May 15, 1963 offer represented to Humble that "the Estate of C. Frederick Luthy, now deceased, has the entire official title to said land but that the leasehold interest is actually owned one-third by Paul Butt Jr., one-third by Defiance Coal Company, and one-third by the Estate of C. Frederick Luthy, deceased. Defendant's Exhibit P-4.

32. The May 15, 1963 letter to Humble indicates that the Luthy interest and the Defiance Coal interest would receive production payments while Mr. Butt had reserved an overriding royalty interest. Defendant's Exhibit P-4.

33. On June 19, 1963, William E. Bondurant Jr., of the Hervey, Dow & Hinkle law firm, issued a title opinion to Humble, relating to the interests covered by the May 15, 1963 offer. In his opinion, Mr. Bondurant stated that "since Mr. Luthy is now deceased his power of control and sale has now ceased and it is not vested in his heirs or devisees." Mr. Bondurant further opined that the one-third interests owned by Paul Butt Jr., Defiance Coal Company, and the estate of C. Frederick Luthy were "titles in real property and not merely contract rights to profits." Defendant's Exhibit P-6.

34. In subsequent correspondence regarding the title opinion, Mr. Bondurant expressed the opinion that "the trust which Mr. Luthy had in mind when he made his Affidavit of December 7, 1954 … and the unrecorded trust dated April 19, 1948 terminated when he died." Mr. Bondurant further opined that "it may be that upon the death of Mr. Luthy this became a dry

7

trust and the legal title would go over to the beneficiaries under the Statutes of Uses . . ..″ Defendant's Exhibit P-20; Plaintiff's Exhibit 30.

35.	On October 8, 1953, Paul Butt Jr., by separate instrument, conveyed his interest in Lease A-4096 tracts 12, 13, 14, 18, 19, and 20 to Humble Oil & Refining Co. In exchange for his assignment, Paul Butt Jr. was paid $31,964.80. This sum was sent to Mr. Butt's attorney, who transmitted the draft to Mr. Butt on November 11, 1963. Defendant's Exhibits P-10, P-11.

36.	The Court finds, based on all of the evidence submitted with respect to the Humble Assignment, that Paul Butt, Jr. exercised independent control over the assignment of his interests in Lease A-4096 Tracts 12, 13, 14, 18, 19 and 20 and was paid directly for this interest with none of the money being paid through ANB.

C.	RANKIN FARMOUT - TRACT 3

37.	Prior to his death, in November of 1962, C. Frederick Luthy executed a farmout agreement with Mann Rankin, for the property covered by Lease A-4096, Tract 3 (hereinafter "Rankin Farmout"). Defendant's Exhibit K-1.

38.	A November 9, 1962 letter from the law firm of Stubbeman, McCrae, Sealy & Laughlin of Midand Texas to Mr. Mann Rankin regarding the Rankin Farmout notes as problematic that the authority of Luthy "as trustee or agent" for Paul Butt, Jr. and Defiance Coal must be established because it was not clear at that time that "the trust is still in force and effect affecting this property or if it is an agency relationship or whether or not the agency is still in force." The letter suggests that Defiance Coal and Paul Butt, Jr. must ratify any agreement. Defendant's Exhibit K-2.

39.	During the course of communications among law firms regarding the Rankin

Farmout, Mr. Luthy died. Defendant's Exhibit K-8.

40. On October 31, 1964, Rankin executed an Assignment of Overriding Royalty Interest. The assignment acknowledged that Rankin had been assigned the leasehold on October 22, 1964. The assignment conveyed a 10% overriding royalty interest and specified that the conveyance was to each of Paul Butt Jr., Defiance Coal Company and ANB as Executor of the estate of Luthy a 3-1/3% orverriding royalty interest. Defendant's Exhibit K-12.

41. The Court finds, based on all the evidence submitted with respect to the Rankin Farmout, that Paul Butt, Jr. was directly assigned 1/3 of the total overriding royalty interest with respect to Lease A-4096 Tract 3.

D.   TURNER FARMOUT - TRACTS 6 AND 7

42. In May 1962, Luthy offered an assignment of Lease A-4096, Tracts 6 and 7, to Charles R. Turner (hereinafter "Turner farmout"). This farmout specified that Turner was to commence drilling on or before June 15, 1962. Defendant's Exhibit L-1.

43. In January 1963, following the death of Luthy, Paul Butt, Jr., Defiance Coal, the widow of Luthy, and ANB as the executor of the estate of Luthy reiterated the Turner farmout offer in accordance with the verbal understanding between Luthy and Turner except that drilling was to commence on or before March 1, 1963. Paul Butt, Jr. signed this offer. The offer was accepted. Defendant's Exhibit L-3.

44. In February 1963, Paul Butt, Jr., Defiance Coal, the widow of Luthy, and ANB as the executor of the estate of Luthy amended the Turner farmout offer at the request of Turner. Paul Butt, Jr. signed this amendment. The amendment was accepted. Defendant's Exhibit L-4.

45. In July 1963, Paul Butt, Jr., Defiance Coal, the widow of Luthy, and ANB as the

executor of the estate of Luthy estate made a new offer on the Turner farmout at Turner's request. This offer specified that drilling was to commence on or before October 1, 1963. Paul Butt, Jr. signed this offer. The offer was accepted. Defendant's Exhibit L-7.

46.     In October 1963, Paul Butt, Jr., Defiance Coal, the widow of Luthy, and ANB as executor of the Luthy estate made a new offer on the Turner farmout. This offer specified that drilling was to commence on or before February 15, 1964. Paul Butt, Jr. signed this offer. The offer was accepted. Defendant's Exhibit L-12.

47.     In September 1965, Turner wrote a letter to a trust officer at ANB indicating that he had engaged in some independent discussions with Paul Butt, Jr. regarding the Turner farmout. Defendant's Exhibit L-13.

48.     On October 28, 1965, ANB, as executor and testamentary trustee of the C. Frederick Luthy Estate, executed an assignment of the entire interests in Lease A-4096, Tracts 6 and 7, to Charles R. Turner. This assignment by ANB ignored the beneficial interest holders. Defendant's Exhibit L-15; Plaintiff's Exhibit 14.

49.     On October 28, 1965, Turner executed an overriding royalty agreement to assign to ANB an overriding royalty interest equal to 1/8 of 8/8ths of all production. Defendant's Exhibit L-16; Plaintiff's Exhibit 15.

50.     On May 25, 1970, a Ratification and Amendment to Agreement regarding the Turner farmout was executed by ANB as trustee under the Will of Luthy and attested by Turner, Defiance Coal, the widow of Luthy and Paul Butt, Jr. The effective date of the Ratification and Amendment to Agreement was backdated to October 28, 1965, the date of the original assignment. This Ratification and Amendment of Agreement noted that ANB, prior to the

assignment to Turner, owned the official legal record title the lands involved in the Turner farmout, had assigned the entire interests in Lease A-4096, Tracts 6 and 7 to Charles R. Turner and had received assignment of the entire 1/8th of 8/8ths overriding royalty interest. The Ratification and Amendment to Agreement ratifies the original assignments but amends the assignment of the overriding royalty interests to 1/16 of 8/8ths of production and assigns these interests in proportional shares to each of the beneficial interest holders. Accordingly, Paul Butt, Jr. was assigned an overriding royalty interest of 1/3 of 1/16th of 8/8ths of production. This Ratification and Amendment to Agreement cured ANB's assignment of the entire interests in tracts 6 and 7 without mention of the beneficial interests. Defendant's Exhibit L-17; Plaintiff's Exhibit 4; Plaintiff's Exhibit 12.

51.     The Court finds, based on all of the evidence submitted with respect to the Turner Farmout, that Paul Butt, Jr. independently engaged in negotiations regarding the Turner Farmout. The bank initially entered into farmout agreement with respect to the entire interests covered by Lease A-4096 Tract 3. This transaction may have been hostile to the rights of Paul Butt, Jr. However, the Court need not make a finding that the bank acted adversely to Paul Butt, Jr.'s rights in Lease A-4096 because such a finding is not necessary to the Court's ultimate determination. In any event, the Ratification and Amendment to Agreement cured any problem with the original farmout agreement entered into by ANB.

E.      MACHRIS - TRACT 1

52.     On October 6, 1954, C. Frederick Luthy and his wife assigned the interest in Lease A-4096 Tract 1 to M.A. Machris. Defendant's Exhibit I-1.

53.     On October 6, 1954, M.A. Machris and his wife assigned to Luthy a 15%

overriding royalty interest. Defendant's Exhibit I-2.

54.     On May 24, 1963, Cities Service Oil Company prepared a Division Order for signature by ANB indicating that ANB was the owner of a 15% overriding royalty interest in Lease A-4096 Tract 1. The record copy of the division order does not reflect that ANB signed the Division Order. Plaintiff's Exhibit 29.

55.     On May 27, 1963, Warren Petroleum Corporation, buyer from M.A. Machris of gas produced in Lease A-4096 Tract 1, prepared a Division Order for signature by ANB indicating that ANB was the owner of a 15% overriding royalty interest in Lease A-4096 Tract 1. The record copy of the division order does not reflect that ANB signed the Division Order. Plaintiff's Exhibit 28A.

56.     On July 1, 1966, the Commissioner of Public Lands notified M.A. Machris that Lease A-4096 assignment 8 had been canceled for failure to remedy a default. Defendant's Exhibit I-6.

57.     Based on the evidence regarding the Machris agreement with respect to Tract 1 of Lease A-4096, the Court acknowledges the possibility that ANB acted adversely to Paul Butt, Jr.'s one-third interest in the lease when it signed division orders in May 1963, four months after Luthy's death, indicating that ANB was the owner of the entire overriding royalty interest belonging to the Luthy-Butt-Defiance venture. However, the Court need not make a finding with regard to ANB's conduct in this transaction as such a finding is not necessary to the ultimate determination in this case.

F.    PAULEY PETROLEUM - TRACT 10

58.     On October 20, 1965, ANB as executor and testamentary trustee of the C.

Frederick Luthy Estate, executed an assignment of the entire interests in Lease A-4096, Tract 10 to Pauley Petroleum Company. This assignment by ANB ignored the beneficial interest holders. Plaintiff's Exhibits 14 and 36.

59.     On October 20, 1965, Pauley Petroleum assigned a 1/8th of 8/8th overriding royalty interest in production on Lease A-4096 Tract 10 to ANB as executor and testamentary trustee of the Luthy estate.

60.     The record in this case does not reflect any further activity with regard to Tract 10 until 1994 when Paul Butt, Jr. executed a term assignment of his interest in Tract 10 to Logro Corporation reserving an overriding royalty equal to the difference between twenty percent and existing lease burdens. Defendant's Exhibit O-1.

61.     Based on the evidence regarding the Pauley Petroleum assignment with respect to Tract 10 of Lease A-4096, the Court acknowledges the possibility that ANB acted adversely to Paul Butt, Jr.'s one-third interest in the lease when it executed the assignment and when it accepted assignment of 1/8 of 8/8 overriding royalty interest in production. However, the Court need not make a finding with regard to ANB's conduct in these transactions because such a finding is not necessary to the Court's conclusions in this case.

G.      SHELL OIL - TRACT 22

62.     On June 17, 1971, ANB, in its capacity as executor of the estate of C. Frederick Luthy, wrote to Shell Oil Company regarding Lease A-4096, Tract 22. In the letter, ANB advised Shell that "the Luthy Estate in reality owned only a 1/3 interest in the 1/21 of the 7/8 working interest," that "Mr. Luthy was an equal partner in the Luthy-Butt-Defiance partnership," and that Luthy's interest was "only 1/3 rather than the whole thereof." Defendant's Exhibit R-1.

63. On or around March 28, 1972, a Shell Oil Company division order was executed reflecting the separate interests of the beneficial interest holders in Tract 22. Each of the interest holders, including Paul Butt, Jr., signed the division order warranting his ownership of the interest reflected in the division order. The division order indicates that Paul Butt, Jr. is owner of 1/63 of 7/8, or 1/3 of the total 1/21 of 7/8 owned by all of the interest holders. Defendant's Exhibit R-4.

64. Beginning no later than May of 1972, Paul Butt, Jr. communicated directly with Shell Oil Company regarding his interest in Tract 22. Shell Oil Company agreed to remit checks and correspondence directly to him. Defendant's Exhibit R-5.

65. IRS Form 1099 was sent by Shell Oil Company directly to Paul Butt, Jr. for tax year 1972 regarding royalty payments to Mr. Butt for his interest. Defendant's Exhibits R-9; R-10.

66. The Court finds, based on all of the evidence submitted with respect to Tracts 12, 13, 14, 18, 19 and 20, that Paul Butt, Jr. was recognized in 1972 as legal owner of 1/3 of the interest owned by the Luthy-Butt-Defiance venture. Royalty payments have been made directly to Paul Butt, Jr., and he has been responsible for the payment of taxes on these royalties.

H.  LATER INDEPENDENT TRANSACTIONS BY PAUL BUTT, JR.

67. On December 8, 1981, Paul Butt, Jr. independently assigned his interest in Lease A-4096, Tract 9, to HNG Oil Company. Defendant's Exhibit N-2.

68. On January 3, 1992, Paul Butt, Jr. independently conveyed his interest in Lease A-4096, Tract 22, to the Permian Basin Acquisition Fund. Defendant's Exhibit R-11.

69. On October 11, 1994, Paul Butt, Jr. independently assigned his interest in Lease A-4096, Tract 10, to Logro Corporation, and on October 6, 1997, Paul Butt Jr. independently

granted to Logro Corporation an extension of this assignment. Defendant's Exhibits O-1; O-2.

70. On January 20, 1998, Paul Butt, Jr. independently assigned to Rio Pecos Corporation his interest in Lease A-4096, Tract 2. Defendant's Exhibit J-1; Plaintiff's Exhibit 33.

71. Paul Butt Jr. is a sophisticated business person who received an MBA from the University of New Mexico in 1959. He worked from 1959 until 1987 with E.F. Hutton & Company, during which he was a stock broker, an account executive, branch manager, and regional manager. Defendant's Exhibit H-13.

I. NEGATIVE FINDINGS - PROOF OF A NEGATIVE BY THE ABSENCE OF EVIDENCE

72. ANB was never appointed or designated to serve as trustee for Lease A-4096.

73. ANB was never appointed or designated to serve as trustee for Paul Butt Jr.

74. No successor trustee was designated or appointed after C. Frederick Luthy's death to carry out the responsibilities set forth in the 1948 Declaration of Trust.

75. ANB was never retained, designated or appointed to serve in any fiduciary capacity for Paul Butt Jr.

76. ANB never affirmatively agreed to serve as trustee for Paul Butt. Jr.

**GOVERNING LAW**

The law of the State of New Mexico applies to the issues in this case. The New Mexico Legislature enacted the Uniform Trust Code (UTC) during its 2003 session. New Mexico Laws 2003, ch. 122, § 1-101. The UTC became effective on July 1, 2003 during the pendency of this action. N.M. Stat. Ann. 1978 §§ 46A-1-101 through 46A-11-1104. The UTC applies to all trusts created before, on or after the effective date of the UTC. N.M. Stat. Ann. 1978 § 46A-11-

1104(A)(1).  It applies to judicial proceedings concerning trusts commenced before the effective date of the UTC unless the court finds that application of a particular provision of the UTC would substantially interfere with the effective conduct of the judicial proceedings or prejudice the rights of the parties, in which case the particular provision of the UTC does not apply.  N.M. Stat. Ann. 1978 § 46A-11-1104(A)(3).  The common law of trusts and principles of equity supplement the UTC.  N.M. Stat. Ann. 1978 § 46A-1-106.

Under the UTC, a trust may be created by transfer of property to another person as trustee, by declaration by the owner of property that the owner holds the property as trustee, or by exercise of a power of appointment.  N.M. Stat. Ann. 1978 § 46A-4-401.  Among the requirements for the creation of a trust is a requirement that the settlor indicate an intention to create the trust.  N.M. Stat. Ann. 1978 § 46A-4-402(A)(2).

Under longstanding principles of common law and equity, a trust will not fail upon the death of a trustee unless the trust's creation or continuation depends on a specific person acting as trustee.  Restatement (Third) of Trusts § 31 (2003).  Under the New Mexico UTC, the death of the trustee results in a vacancy in the trusteeship that must be filled.  N.M. Stat. Ann. 1978 § 46A-7-704(A)and (B).  This vacancy must be filled by a person designated as successor trustee by the terms of the trust.  N.M. Stat. Ann. 1978 § 46A-7-704(C).  If no successor trustee is designated, the vacancy must be filled by a person appointed by unanimous agreement of the qualified beneficiaries.  Id.  If no person is appointed by unanimous agreement, the vacancy must be filled by a person appointed by the Court.  Id.  A divisee who obtains legal title to trust property is not permitted to administer the trust unless he is so authorized by the terms of the trust.  Restatement (Second) of Trusts § 105 comment a (1959).  A person accepts the role of

trustee by accepting delivery of trust property or by exercising powers or performing duties as trustee or otherwise indicating acceptance of the trusteeship.  N.M. Stat. Ann. 1978 § 46A-7-701.  However, this only applies to persons who have been designated as trustee.  Id.  See also Restatement (Third) of Trusts § 35.

**CONCLUSIONS OF LAW**

1. The 1948 "Declaration of Trust" relating to Lease A-4097 may have formalized a trust relationship by which C. Frederick Luthy held Lease A-4097 in trust for the benefit of himself, Paul Butt and the Kaseman interest with each beneficiary having a 1/3 interest.  However, the Court need not conclude that this document created or formalized a trust as such a conclusion is not necessary to the determination of the ultimate issue in this case.  For purposes of this case, the Court will assume that a trust relationship existed and that C. Frederick Luthy was the trustee.

2. Assuming the existence of a trust with Luthy as trustee, the trust was without a trustee upon the death of Luthy.  The trust may have failed upon the death of Luthy as the trust's creation or continuation may have depended on Luthy being the specific person to act as trustee.  However, the Court need not conclude that the trust failed upon the death of Luthy, because such a conclusion is not necessary to the determination of the ultimate issue in this case.  For purposes of this case, the Court will assume that the trust did not fail upon the death of Luthy.

3. As already noted, no successor trustee was named in the "Declaration of Trust" and no means was provided for appointment of a successor trustee.  Accordingly, the vacancy of the trusteeship upon the death of Luthy had to be filled by a person appointed by unanimous agreement of the beneficiaries or by a person appointed by a court.  N.M. Stat. Ann. 1978 § 46A-7-704(C).

4. No person or entity was appointed as successor trustee by the beneficiaries or by a court. ANB was not appointed as successor trustee by the beneficiaries or by a court.

5. Even if ANB acted with respect to the entire legal interests of property the subject of Lease A-4096, this could not, as a matter of law, have served as an acceptance of the role of trustee. Performing duties of a trustee or accepting delivery of trust property will be an acceptance of the role of trustee only if the person or entity doing so has been designated as trustee. N.M. Stat. Ann. 1978 § 46A-7-701.

6. ANB did not, at any time, serve as trustee for Lease A-4096.

7. ANB never agreed to serve as trustee, or in any other fiduciary capacity, for Paul Butt Jr.

8. ANB never served as trustee, or as fiduciary, for Paul Butt Jr., in any way regarding Lease A-4096.

9. No special relationship giving rise to a fiduciary duty existed at any time between ANB and Paul Butt Jr.

10. As Paul Butt, Jr. has been managing his own interests in the lease property, the Court does not perceive an issue with regard to any cloud on the title. However, to the extent Mr. Butt seeks to remove any cloud on his title, this is an in rem action appropriately brought in the Fifth Judicial District Court for the State of New Mexico in Lea County.

11. Any finding of fact that is more appropriately a conclusion of law shall be deemed a conclusion of law. Any conclusion of law that is more appropriately a finding of fact shall be deemed a finding of fact.

**CONCLUSION**

      IT IS THEREFORE ORDERED that Defendant did not owe Plaintiff a fiduciary duty and so could not have breached a fiduciary duty in dealing with property that was the subject of Oil and Gas Lease A-4096 issued by the State of New Mexico. Thus, Defendant is entitled to Judgment on Plaintiff's cause of action for breach of fiduciary duty, and judgment shall be entered accordingly.

                                                  _____
                                                  UNITED STATES DISTRICT JUDGE