IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PAUL BUTT, JR.,

        Plaintiff,

v.                                      CV 03-0095 WPL/LFG

BANK OF AMERICA, N.A.,

        Defendant.

## DECISION

This matter was remanded by the United States Court of Appeals, Tenth Circuit, so that the Court could determine whether Paul Butt, Jr. has a valid claim for accounting against Bank of America with regard to the Pauley Petroleum and Machris Assignments. The Court, having considered the evidence presented on February 14, 2008, together with the Requested Findings of Fact and Conclusions of Law submitted by the parties, and being fully advised about all issues in this case, enters the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1.      The Memorandum of Decision entered by Judge William P. Johnson contains certain historical facts that are not challenged by either party, and Findings of Fact Nos. 1 - 17, 26 and 27 are hereby incorporated by reference into this Decision. (Doc. 123 at 2 - 5.)

2.      Between 1953, when his father died, and 1963, when Fred Luthy died, Mr. Butt requested that Mr. Luthy make distributions to Mr. Butt of his share of the proceeds from Lease A-4096. Mr. Luthy tendered these distributions to Mr. Butt without explaining the source of the payments or the properties or wells to which they related. Mr. Butt also received a distribution from

his share of the proceeds from Lease A-4096 in 1966.

   3.  By May 15, 1963, Mr. Butt knew that the estate of Fred Luthy had the entire official title to Lease A-4096, but that the leasehold interest was actually owned one-third by Paul Butt, Jr., one-third by Defiance Coal Company, and one-third by the estate of Fred Luthy.

   4.  On October 20, 1965, ANB, as executor of the estate and trustee under the will of Fred Luthy, executed an assignment in favor of Pauley Petroleum, Inc., of all of its interest in Tract 10 of Lease A-4096 for one dollar ($1.00), and Pauley Petroleum assigned a 1/8th of 8/8th overriding royalty interest in production on Lease A-4096 Tract 10 to ANB. These documents do not reflect the payment of a bonus, an advance or delay rental, or any other consideration from Pauley to ANB.

   5.  No well has ever been drilled on Tract 10 of Lease A-4096.

   6.  There is no evidence that ANB received any funds belonging to Mr. Butt or relating to his share of Tract 10 of Lease A-4096, for the period from January 1963 to August 1965.

   7.  On October 6, 1954, Fred Luthy assigned the interest in Tract 1 of Lease A-4096 to M.A. Machris, and Machris assigned to Luthy a 15% overriding royalty interest in the production from that tract.

   8.  Machris drilled one well, the Machris MA State Well No. 4, on Tract 1 in 1955. The well ceased production in August of 1965, and was plugged and abandoned later that year.

   9.  On May 24, 1963, Cities Services Oil Company submitted a Division Order to ANB for signature. The proposed Division Order stated that ANB was the owner of a 15% overriding royalty interest in the oil produced from Tract 1 of Lease A-4096. There is no evidence that ANB signed this Division Order.

   10.  On May 27, 1963, Warren Petroleum Corporation submitted a Division Order to ANB

for signature. The proposed Division Order stated that ANB was the owner of a 15% overriding royalty interest in the gas produced from Tract 1 of Lease A-4096. There is no evidence that ANB signed this Division Order.

11. Between January of 1963, when Fred Luthy died, and August of 1965 when production ceased, the Machris MA State Well No. 4 produced a total of 3032 barrels of oil and 19,403 Mcf of natural gas.

12. Mr. Butt's share of the production from the Machris MA State Well No. 4 from January of 1963 to August of 1965 was 151.6 barrels of oil and 970.15 Mcf of natural gas.

13. From 1963 to 1965, the highest prevailing price in the United States for oil was $2.88 per barrel and for natural gas was $0.16 per Mcf.

14. The value of Mr. Butt's share of production from the Machris MA State Well No. 4 from January 1963 to August 1965 at the highest prices then prevailing is $436.61 for oil and $155.23 for natural gas.

15. It is a standard practice in the oil and gas industry for producers and well operators to place payments in suspense when they are unsure who is entitled to the payment, and to hold such payments until they have received an executed division order that clarifies ownership of the interest in question.

16. There is no evidence that ANB ever received any payment for any portion of Mr. Butt's share of production from the Machris MA State Well No. 4 for the period between January 1963 to August 1965.

## CONCLUSIONS OF LAW

1. By the end of 1963 Mr. Butt knew or should have known that he owned an undivided

one-third interest in the entire leasehold covered by Lease A-4096 and that the Luthy-Butt-Defiance Coal partnership had received and was receiving income from Lease A-4096.

2.	The Bank has failed to establish that Mr. Butt's claims are time-barred or are barred by laches.

3.	The Bank did not act adversely to Mr. Butt's interest in Lease A-4096 with respect to either the Pauley Petroleum or Machris Assignments.

4.	The Bank did not withhold any payments due to Mr. Butt under either the Pauley Petroleum or Machris Assignments.

5.	Mr. Butt is not entitled to an accounting.

6.	All Requested Findings of Fact and Conclusions of Law that are not contained in or consistent with this Decision are refused.

_____
WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE